Pedro N. AGUIRRE et ux., Appellants,

v.

William MUMMA et ux., Appellees.

No. 13919.

Court of Civil Appeals of Texas.

San Antonio.

May 23, 1962.

Rehearing Denied June 13, 1962.

Schweppe, Schweppe & Allison, Tafolla & Tafolla, Charles A. Ramirez, San Antonio, for appellants.

M. M. Pena, Jr., San Antonio, for appellees.

POPE, Justice.

This is a suit for change of custody between parents and non-relatives, and both homes are fit and proper. Pedro Aguirre and Cecilia Aguirre are the natural parents of Estella Aguirre, a five-year-old child. At the time of the hearing, Mr. and Mrs. William Mumma had the custody and the court continued that custody. The judgment stated that the mother had surrendered custody, that Mrs. Mumma had exercised custody since birth, that the child had been well cared for, that the Mummas are fit persons, and that the best interests of the child would be served by leaving her with the Mummas. The parents have had visitation rights and those rights were continued. In our opinion, the child should be restored to her mother and father.

Estella was born August 23, 1955. Five days after her birth, of necessity and upon advice of a priest, the mother gave the child to Pedro, the father. He took her home, and his wife, now Mrs. Mumma, accepted the child. She has been good to Estella and has reared her along with three children born of her marriage with Pedro. Estella remained in the home with Pedro, her natural father, and her foster mother until November 21, 1958, when Pedro's wife divorced him. She asked for custody of Estella and the other three children. Pedro did not contest the divorce and the decree awarded all the children to the present Mrs. Mumma.

Pedro married Cecilia, the natural mother of Estella, on November 22, 1958. They then took the necessary steps to correct the birth certificate to show the child's name as Estella Aguirre. She has always gone by that name. After her marriage to Pedro, Cecilia visited the foster mother and asked that she surrender the custody of Estella to her and Pedro, but she refused. On August 14, 1959, the foster mother married William Mumma. No steps have ever been taken by Mrs. Mumma to adopt Estella, and she is not and has never been a dependent or neglected child.

The contest is between two homes, both of which are presently fit and proper. One is that of the child's parents; the other is a foster home with non-relatives. Unlike Solomon's case, the foster mother has not consented to the slaughter of the child, but is motivated by the noblest of motives, and is a good woman. The decision is therefore more difficult. Moreover, Mr. Mumma has accepted the child and he too is good to Estella. To make it even more difficult, there is a divorce decree between Pedro and the present Mrs. Mumma which gave her the custody. There is also the trial court's judgment in this case, reached after the judge saw and heard all persons involved, including Estella, the child.

There is a rebuttable presumption which favors the parents. That presumption was overcome in the divorce decree, so far as Pedro is concerned, but Cecilia was not a party to that action. We are now concerned, in any event, with changed conditions. Taylor v. Meek, 154 Tex. 305, 276 S.W.2d 787; De Gaish v. Marriott, Tex.Civ.App., 345 S.W.2d 585; Leonard v. Leonard, Tex.Civ.App., 218 S. W.2d 296, 301. Pedro and Cecilia are now married. Pedro has always recog-

nized Estella and her brother, also born of Cecilia. They are his children. Art. 2581, Vernon's Tex.Civ.Stats. By correcting the birth records, Estella's status and name are now settled. Cecilia, the natural mother, did not abandon her baby. She surrendered Estella to the father. See Pettit v. Engelking, Tex.Civ.App., 260 S. W.2d 613, 619. Pedro, we should not forget, also had the custody and care of the child up to the time of his divorce. Estella and her father are not strangers. They lived in the same home for more than three years, and their relationship has always been harmonious. Mr. Mumma is new in Estella's life. To hold that Estella's long-established relationship should not be altered is to ignore the fact that by her going to the Aguirre family she is restored to her father with whom she has lived, and by staying with the Mumma family she is in a home with a new father. In either home she will be with a familiar and an unfamiliar adult.

Estella's situation is an awkward one. She bears her parents' name but lives in the Mumma home. She visits her parents, who tell her that Cecilia is her mother, and returns to Mrs. Mumma, who tells her that she is the mother. This condition keeps alive the situation which Pedro's marriage and the Texas law have corrected.

 Natural parents may forfeit their right to custody of their own children. Skrobarcek v. Stephenson, Tex.Civ.App., 249 S.W.2d 83. The choice between homes in the Skrobarcek case, however, was between established harmonious relations in a foster home and an unfit parent who had a history of indifference and neglect. That is not our choice in this case. In State ex rel. Wood v. Deaton, 93 Tex. 243, 54 S.W. 901, the foster parents, as here, were good. As here, to sever the ties between them and the child, was hard. The mother had surrendered her two-year-old child when in necessitous circumstances, and the child had remained with loving foster parents for four years. The court restored the child to the mother. In our opinion, the future best interests of Estella will be served by restoring her to her own mother and father, who are fit and proper persons. Fisher v. Montgomery, Tex.Civ.App., 274 S.W.2d 858.

The judgment is accordingly reversed and rendered that the parents have Estella's custody.

BARROW, J., not participating.